-FILED-

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DEC 22 2016

ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause Number: 2:16CR 178 |
| | ) | |
| | ) | 18 U.S.C. § 371 |
| | ) | 18 U.S.C. § 1343 |
| RICHARD E. GEARHART | ) | 15 U.S.C. §§ 78j(b), 78ff(a) |
| GEORGE R. MCKOWN | ) | 17 C.F.R. § 240.10b-5 |

## INDICTMENT

**THE GRAND JURY CHARGES:**

### General Allegations

At times material to this Indictment:

1. Richard E. Gearhart (Gearhart), a resident of Indiana, represented himself as having experience in the investment and financial services field. Gearhart was a licensed Indiana insurance agent, d/b/a, Gearhart & Associates, Inc.

2. George R. McKown (McKown), a resident of Indiana, represented himself as having experience in the investment and financial services field. McKown was a licensed Indiana insurance agent, d/b/a, McKown & Associates Insurance, Inc.

3. Asset Preservation Specialists, Inc. (APS) was incorporated in the

1

State of Indiana and purported to operate with a network of financial and insurance advisors. Gearhart was the Chief Executive Officer. Gearhart and McKown also acted as President of APS. During the scheme, the principal bank account for APS was located in Northwest Indiana with the account ending in 0292. Gearhart and McKown, along with others known and unknown to the grand jury, promoted investment contracts and notes, primarily to current and former insurance clients. Business A, with offices located in Las Vegas, Nevada, was an administrator of self-directed Individual Retirement Accounts (IRA).

4. Pursuant to 15 U.S.C. § 78c(a)(10), a security is defined as any investment contract or note. The investment contracts and notes sold by Gearhart and McKown were securities which were *not* registered with either the U.S. Securities and Exchange Commission (SEC) or the Indiana Secretary of State, Securities Division (Indiana Securities Division). Pursuant to 15 U.S.C. § 78o and Indiana Code §23-19-4-1, a broker-dealer must be registered with the SEC or Indiana Securities Division in order to sell securities. Gearhart and McKown were not registered with the SEC or the Indiana Securities Division to sell securities as a broker or dealer.

5. For the express purpose of purchasing the securities sold by Gearhart and McKown, investors transferred funds utilizing the US Mail,

private and commercial carriers, interstate wire communications, and hand-delivery from their financial accounts to financial accounts under the care, custody, and control of Gearhart.

6. Between in or about 2008 and continuing through 2013, the defendants Gearhart and McKown, received more than $6 million dollars from more than 25 investors who purchased investment contracts and notes from Gearhart and McKown. Due to the fraudulent conduct of Gearhart and McKown, the investors' losses were in excess of $3.5 million dollars.

## Fraudulent Scheme to Obtain Investor Money

7. Between in or about 2008 and continuing through in or about 2013, the defendants Gearhart and McKown, together with others, engaged in a scheme whereby they obtained investor funds through false statements, misrepresentations, and omissions of material facts and used those funds for their own personal use and benefit. At the same time, Gearhart and McKown concealed their actions from investors and federal and state authorities.

8. Gearhart, McKown, and others sold and promoted the sale of securities, in the form of the investment contracts and notes, to investors in amounts varying from $10,000 to over $250,000. Gearhart and McKown guaranteed in writing: (1) that the original investment would be returned with no loss of principal within 45 days; and (2) that the original investment would

3

earn interest at a certain percent annually.

9. Based upon the false and misleading claims and omissions made by Gearhart and McKown, investors cashed out and liquidated their traditional personal and long term investments, such as insurance annuities, Individual Retirement Accounts (IRA), pensions, and 401Ks in order to re-invest these funds with them. Gearhart and McKown provided the investors with Business A's Application and Direction of Investment Form to open a self-directed IRA wherein Gearhart was identified as the manager of the self-directed IRA. After the investors agreed, their funds were wire transferred and mailed to Business A and subsequently wired and mailed to financial accounts under the care, custody, and control of Gearhart.

10. Gearhart and McKown failed to inform investors how their invested funds were being used. Without the authority and knowledge of the investors, Gearhart, McKown, and others used investor money for their personal benefit and gain by utilizing investor money to fund businesses in which Gearhart and McKown were officers, owners, or members in addition to funding loans to other businesses. Furthermore, the investors' funds were used to make principal repayments and interest payments to other investors.

11. Gearhart and McKown concealed the scheme by utilizing the US Mail, private and commercial carriers, and wire communications to send

documents to investors giving them the impression that the investments were gaining value. They sent emails, made telephone calls, and forwarded mailings which were designed to lull the victims into a false sense of security, postpone any complaints to authorities, and avoid and conceal their discovery.

## COUNT 1
(Conspiracy to Commit Securities Fraud)

12. Between in or about 2008 and continuing through in or about 2013, in the Northern District of Indiana, the defendants,

**RICHARD E. GEARHART, and
GEORGE R. MCKOWN,**

together with others, did knowingly and willfully conspire, by the use of the means and instrumentalities of interstate commerce and the mails, directly and indirectly, in connection with the offer, purchase, and sale of unregistered securities, to use and employ manipulative and deceptive devices and contrivances contrary to Rule 10b-5 of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (i) employing devices, schemes and artifices to defraud; (ii) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaging in acts, practices and courses of business which would and did operate as a fraud and deceit upon investors in the investment contracts and notes in

violation of Title 15, United States Code, Sections 78j(b) and 78ff(a).

13. In furtherance of the conspiracy and to effect its objects, within the Northern District of Indiana and elsewhere, the defendants, Gearhart and McKown and others, committed and caused to be committed the following acts in furtherance of the conspiracy:

### Overt Acts

14. In or about August 2009, Gearhart and McKown offered and sold a note to Investor 1 in excess of $250,000. Investor 1 was promised an eight percent annual return. Investor 1 obtained a check from her insurance annuity and endorsed it payable to "Asset Preservation Specialists" for the purchase of the note. The funds were deposited in the APS 0292 account.

15. In or about August 2009, Gearhart offered and sold an investment contract to Investor 2 in excess of $700,000. This investment contract was memorialized with a note. Investor 2 was promised an eight percent annual return. Investor 2 transferred his funds to Business A by rolling over his retirement accounts to the Business A IRA which then mailed a check to APS. The funds were deposited in the APS 0292 account.

16. Between in or about September 2009 and continuing through in or about November 2009, Gearhart offered and sold an investment contract to Investor 3 in excess of $140,000. This investment contract was memorialized

with a note. Investor 3 was promised a six percent annual return. Investor 3 transferred his funds to Business A by rolling over his retirement accounts to the Business A IRA. Business A wire transferred Investor 3's funds to the APS 0292 account.

17. Between in or about October 2009 and continuing through in or about December 2009, Gearhart and McKown offered and sold an investment contract to Investor 4 in the amount of $100,000. This investment contract was memorialized with a note. Investor 4 was promised an eight percent annual return. Investor 4 transferred his funds to Business A by rolling over his retirement accounts to the Business A IRA which then mailed a check to APS. The funds were deposited in the APS 0292 account.

18. In or about December 2010, Gearhart offered and sold an investment contract to Investor 5 in the amount of $190,000. This investment contract was memorialized with a note. Investor 5 was promised a six percent annual return. Investor 5 transferred her funds to Business A by rolling over her retirement accounts to the Business A IRA. Business A wire transferred Investor 5's funds to the APS 0292 account.

19. Between in or about January 2010 and continuing through in or about April 2010 Gearhart, along with others known and unknown to the grand jury, offered and sold an investment contract to Investor 6 in excess of

$400,000. This investment contract was memorialized with a note. Investor 6 was promised an eight percent annual return. Investor 6 transferred his funds to Business A by rolling over his retirement accounts to the Business A IRA. Business A wire transferred Investor 6's funds to the APS 0292 account.

20. In or about December 2010, Investor 6 received his APS corporate statement from Gearhart which reflected that his $413,358.10 investment had an ending balance of $421,124.95.

21. In or about March 2011, Gearhart and McKown offered and sold a note to Investor 7 for $100,000. Gearhart and McKown promised Investor 7 an eight percent annual return on her investment. Investor 7 wrote a check for the investment to APS which was deposited into APS 0292.

22. In or about June 2011, Gearhart offered and sold an investment contract to Investor 8 in excess of $80,000. This investment contract was memorialized with a note. Investor 8 was promised an eight percent annual return. Investor 8 transferred her funds to Business A by rolling over her retirement account to the Business A IRA. Business A wire transferred Investor 8's funds to the APS 0292 account.

23. In or about July 2011, Investor 5 received her APS corporate statement from Gearhart which reflected that her $190,000.00 investment had an ending balance of $196,650.00.

24. In or about July 2011, Investor 3 received his APS corporate statement from Gearhart which reflected that his $140,000.00 investment had an ending balance of $160,215.70.

25. In or about August 2011, Investor 7 sent an email to McKown requesting a $50,000 withdrawal of funds from her note, more than 45 days in advance, per the agreement with Gearhart and McKown.

26. In or about September 2011, Gearhart offered and sold an investment contract to Investor 9 in the amount of $50,000. This investment contract was memorialized with a note. Investor 9 was promised a six percent annual return. Investor 9 gave the funds to APS by writing a check. These funds were deposited into the APS 0292 account.

27. Between in or about September 2011 and continuing through in or about October 2011, Gearhart offered and sold an additional investment contract to Investor 9 in the amount of $175,000. This investment contract was memorialized with a note. Investor 9 was promised a six percent annual return. Investor 9 transferred his funds to Business A by rolling over his retirement account to the Business A IRA. Business A wire transferred Investor 9's funds to the APS 0292 account.

28. In or about October 2011, Investor 7 provided Gearhart and McKown with a voided check in order to receive direct deposits for monthly

interest payments from the note which they promoted and sold to her. As a result, between in or about November 2011 and continuing through in or about September 2012, Investor 7 received direct deposits for monthly interest payments from the note they promoted and sold to her.

29. Between in or about November 2011 and continuing through in or about December 2011, Gearhart offered and sold an investment contract to Investor 10 in the amount of $56,000. This investment contract was memorialized with a note. Investor 10 was promised a six percent annual return. Investor 10 transferred her funds to Business A by rolling over her retirement account to the Business A IRA. Business A wire transferred Investor 10's funds to the APS 0292 account.

30. In or about November 2011, Investor 10 received correspondence in Valparaiso, IN from Business A, located in Nevada, regarding the IRA she opened at the direction of Gearhart.

31. In or about December 2011, Investor 7 sent an email to Gearhart and McKown requesting the return of her principal investment in February 2012 and March 2012, per the terms of the note and the agreement.

32. Between in or about February 2012 and continuing through in or about November 2012, emails were exchanged between Investor 7, Gearhart, and McKown wherein she was requesting the return of her entire $100,000

investment with APS. During this time period, Investor 7 was advised by Gearhart and McKown not to make a "run on the bank," be patient, and provided dates the funds would be returned.

33. Between in or about September 2012 and continuing through in or about October 2012, Gearhart and McKown exchanged emails between each other regarding Investor 7's request to obtain funds from the note which they promoted and sold to her.

34. In or about October 2012, Investor 11's APS corporate statement was emailed to her from Gearhart which reflected that her $120,000.00 investment had an ending balance of $167,157.47 that he promoted and sold to her.

35. In or about October 2012, Gearhart and others emailed Investor 10 a financial statement which reflected that her original $56,000 investment had an ending balance of $59,426.67 as of September 2012.

36. Between in or about December 2012 and continuing through in or about February 2013, Gearhart exchanged emails with Investor 11 who continually requested information regarding her original $120,000 investment. As a result, in or about January 2013, Gearhart emailed Investor 11 a financial statement which reflected that her original investment had an ending balance of $157,695.32.

37. Between in or about December 2012 and continuing through in or about January 2013, Investor 10 telephoned Gearhart and sent a letter through the US Mail requesting that Gearhart return the full amount of her original investment including all of her earned interest from the investment.

All in violation of Title 18, United States Code, Section 371.

## THE GRAND JURY FURTHER CHARGES:

### COUNTS 2-5
(Securities Fraud)

1. The allegations in paragraphs 1 through 12 and 14 through 37 of Count One of this Indictment are incorporated here.

2. From on or about the dates set forth below, in the Northern District of Indiana and elsewhere, the defendants,

**RICHARD E. GEARHART, and
GEORGE R. MCKOWN,**

aided and abetted by each other, did knowingly and unlawfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and of the mails, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of an unregistered security in contravention of federal law by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which would and did operate as a fraud and deceit, in connection with the purchase and sale of securities, to wit:

| Count | Date | Description |
|---|---|---|
| 2 | 12/23/2010 | Investor 5 purchased a security from Gearhart in which Gearhart promised Investor 5 that her $190,000 principal was safe and sound with a |

| | | |
|---|---|---|
| | | guaranteed 6% rate of return. At the direction of Gearhart, Investor 5 wire transferred her $190,000 to Business A (NV) and Business A wire transferred Investor 5's money to Gearhart at APS 0292 (IN). |
| 3 | 03/25/2011 | Investor 7 purchased a security from Gearhart and McKown in which Gearhart and McKown promised Investor 7 that her $100,000 principal was safe and sound with a guaranteed 8% rate of return. At the direction of Gearhart and McKown, Investor 7 wrote Check No. 105 in the amount of $100,000 which was made payable to APS and deposited into APS 0292 (IN) wherein the funds from Investor 7's bank account were wire transferred into APS 0292. |
| 4 | 12/09/2011 | Investor 10 purchased a security from Gearhart in which Gearhart promised Investor 10 that her $56,000 principal was safe and sound with a guaranteed 6% rate of return. At Gearhart's direction, Investor 10 wire transferred her $56,000 to Business A (NV) and Business A wire transferred Investor 10's money to Gearhart at APS 0292 (IN). |
| 5 | 02/21/2012 | Investor 12 purchased a security from Gearhart in which Gearhart promised Investor 12 that her additional $14,300 principal was safe and sound with a guaranteed 8% rate of return. At the direction of Gearhart, Investor 12 wrote Check No. 7099 in the amount of $14,300 which was made payable to APS and deposited into APS 0292 (IN) wherein the funds from Investor 12's bank account were wire transferred into APS 0292. |

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2.

**THE GRAND JURY FURTHER CHARGES:**

## COUNTS 6-7
(Wire Fraud)

1.  The allegations in paragraphs 1 through 12 and 14 through 37 of Count One of this Indictment are incorporated here.

2.  On or about the dates set forth below, in the Northern District of Indiana and elsewhere, the defendants,

**RICHARD E. GEARHART, and
GEORGE R. MCKOWN,**

aided and abetted by each other, did knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, promises and concealment of material information by knowingly transmitting and causing to be transmitted by wire communications in interstate commerce certain writings, signs, signals, pictures, and sounds for the purpose of executing and attempting to execute the scheme and artifice to defraud through the sale of an unregistered security, to wit:

| Count | Date | Description of Wire Transfer |
|---|---|---|
| 6 | 09/04/2012 | Investor 7 received an email communication from Gearhart rejecting her request for withdrawal of funds from her $100,000 note which was promoted and sold to her by Gearhart and McKown wherein they had promised her principal investment would be returned upon request when she purchased the security. |

| 7 | 02/6/2013 | Investor 13 received an email communication from Gearhart which included a financial statement indicating that his $25,000 note, promoted and sold to him by Gearhart, was earning monthly interest and advising Investor 13 that APS was experiencing difficulties which made his principal investment unavailable. |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The allegations contained in Counts 1 through 7 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Upon conviction of the offense alleged in Counts 1 through 7 of the Indictment, the defendant shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) any personal property used or intended to be used to commit the offenses.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

i. cannot be located upon the exercise of due diligence;
ii. has been transferred or sold to, or deposited with, a third person;
iii. has been placed beyond the jurisdiction of the Court;
iv. has been substantially diminished in value; or
v. has been commingled with other property that cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendant up to the value of the above-described property.

A TRUE BILL:

*/s/ FOREPERSON*
FOREPERSON


DAVID A. CAPP
UNITED STATES ATTORNEY

By:   */s/ Toi Denise Houston*
Toi Denise Houston
Assistant United States Attorney